IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GENEVA REED-VEAL, ET AL.** | § | |
| *Plaintiffs*, | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 4:15-CV-02232** |
| | § | **(JURY TRIAL REQUESTED)** |
| **BRIAN ENCINIA, ET AL.,** | § | |
| *Defendants*. | § | |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **Defendants,**[1] file this their Motion for Protective Order, and would respectfully show unto the Court as follows:

### I.

At its initial conference, the Court admonished the parties to not try this case in the media. Plaintiffs' counsel has clearly violated the Court's directive. For example, on July 21, 2016, the Houston Chronicle published a front page article which unequivocally suggests that Plaintiffs' counsel has selectively disclosed to the media small portions of discovery in this lawsuit, including very limited excerpts from dozens of hours of deposition testimony in the case.[2] As the title and the content of the Chronicle article make clear, opposing counsel was the source of

---

[1] This motion is filed by County Defendants—Waller County, Texas, Elsa Magnus, Oscar Prudente, Rafael Zuniga, Michael Serges, Dormic Smith, Cynthia Whidden, Marc Langdon, Sherry Rochen, Lanny Thibodeaux, Matthew Mills, Marianne Williams, and Randy Lewis—and Defendant Brian Encinia.

the selectively chosen portions of the recent deposition testimony shared with the media.[3]

Contrary to Plaintiffs' selected disclosure of limited information (which they have presented out of context), Defendants have honored the Court's directive, and preserved sensitive information obtained through discovery which Plaintiffs' counsel would surely want to keep confidential, including, but not limited to, the contents of Sandra Bland's cell phone, the deposition transcripts of Geneva Reed-Veal and other family members, and other sensitive and potentially embarrassing and inflammatory evidence.

Plaintiffs' counsel's selectively chosen discovery leaks violate the Court's directive from the bench to not try the case in the media, and threaten the integrity of this litigation by presenting a one-sided, limited view of the potential evidence in this litigation, often out of context, and thus creating a risk that a fair and orderly trial cannot be achieved. Their actions stoke unnecessary and misdirected controversies and create risks to all parties involved. Accordingly, for the benefit of Plaintiffs, their witnesses, and family members, and all parties involved,

---

[2] Attached as Ex. A. Available online at, http://www.houstonchronicle.com/news/houston-texas/houston/article/Former-jailer-admitted-falsifying-log-in-Sandra-8402067.php?t=e93216fcd6438d9cbb.

[3] Mr. Lambert's actions also implicate the Federal Model Rules of Professional Conduct, the Texas Disciplinary Rules of Professional Conduct, and the Illinois Rules of Professional Conduct regarding trial publicity. *See* MODEL RULES OF PROF'L CONDUCT r. 3.6 ("A lawyer who is participating . . . in the litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."); TEX. DISCIPLINARY RULES OF PROF'L CONDUCT r. 3.7; ILL. RULES PROF'L CONDUCT r. 3.6.

Defendants respectfully request that the Court formalize its directive to not try the case in the media, and enter a protective order:

- sealing deposition testimony;

- prohibiting the parties, lawyers, witnesses, and potential witnesses from divulging any discovery materials or deposition testimony to the media or other third parties; and

- prohibiting the parties, lawyers, witnesses, and potential witnesses from providing extrajudicial statements or interviews about this litigation (other than on matters of public record).

The scope of the protective order proposed by Defendants will not prohibit these individuals from discussing, without elaboration or characterization, (1) the general nature of any allegations or defenses; (2) information contained in the public record; (3) scheduling information; (4) any decision or order by the Court that is a matter of public record; and (5) "the contents or substance" of any filed motion, to the extent the motion is a matter of public record.

All parties will equally benefit from this protective order. The protective order proposed by Defendants will help ensure that all parties receive a fair trial, before a fair and impartial jury. Accordingly, Defendants respectfully request that the Court enter a protective order.

## II. ARGUMENT & AUTHORITIES

### A. Applicable Legal Standard

District courts are afforded broad discretion and deference to ensure fair and orderly trials. *See U.S. v. Harrelson*, 713 F.2d 1114, 1117 (5th Cir. 1983) (explaining that district court judges possess "broad discretion, based on the law and on [their] common experience," to ensure a fair and orderly trial). "[C]onsiderable discretion is vested in the district courts in ensuring fair trials and avoiding a 'circus atmosphere' or 'chaos' that can be occasioned by unfettered aggression on the part of one or both sides in litigation." *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 492 (5th Cir. 2013) (citing *Harrelson*, 713 F.2d at 1117). Additionally, the United States Supreme Court "made clear that trial judges have a responsibility to avoid the creation of a 'carnival atmosphere' in high-profile cases." *U.S. v. Brown*, 218 F.3d 415, 429 (5th Cir. 2000) (citing *Sheppard v. Maxwell*, 86 S.Ct. 1507, 1520–21 (1966)).

This discretion includes issuing protective orders, or "gag orders," prohibiting parties, attorneys, and witnesses from discussing pending litigation. *See, e.g.*, *Marceaux*, 731 F.3d at 492; *Brown*, 218 F.3d at 431–32 (affirming district court's gag order prohibiting trial participants from sharing "[s]tatements of information intended to influence public opinion regarding the merits of [the] case"). "Indeed, '[a]lthough litigants do not surrender their First Amendment

rights at the courthouse door, those rights may be subordinated to other interests that arise' in the context of both civil and criminal trials." *Brown*, 218 F.3d at 424 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984)).

Courts in the Fifth Circuit have acknowledged that, although gag orders pose a potential First Amendment "prior restraint" issue, gag orders on trial participants are evaluated under a less stringent standard than those on the media. *Id.* at 425. In the Fifth Circuit, "if the district court determines that there is a 'substantial likelihood' . . . that extrajudicial commentary by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available." *Id.* at 428. Although the *Brown* standard arose in the context of a criminal matter, the Fifth Circuit has also ruled that it applies to civil matters. *See Marceaux*, 731 F.3d at 494 (holding *Brown* applies in the civil context because "civil cases also require avoiding the potential that pretrial publicity may taint the jury venire, resulting in a jury that is biased toward one party or another and preventing the creation of a carnival atmosphere, which threatens the integrity of the proceeding").

**B.      Defendants' Proposed Protective Order Will Help Ensure a Fair Trial**

Given the pervasive media coverage surrounding this litigation, and Plaintiffs' counsel's demonstrated willingness to manipulate it for favorable attention, a protective order is necessary to avoid a "carnival atmosphere."

Defendants' proposed protective order is modeled on the order upheld by the Fifth Circuit in *Brown*, and it is narrowly tailored and the least restrictive means available to address the substantial likelihood that extrajudicial commentary by trial participants will undermine a fair trial.

    1.    *There is a substantial likelihood of prejudice if Plaintiffs and her counsel continue to make extrajudicial statements to the media.*

The substantial likelihood of prejudice here is easily identifiable. Plaintiffs and her counsel have demonstrated that they are willing to try this case in the press notwithstanding the Court's admonishment not to do so, and there is a substantial likelihood that they will continue to do so in an attempt to influence the jury pool and create a prejudicial atmosphere. The concerns here are similar to those presented before the district court in *Brown,* namely that: (1) unrestricted statements by the trial participants would only serve to increase the volume of trial publicity; and (2) pretrial publicity would taint the potential jury pool. *Brown*, 218 F.3d at 429. The *Brown* court's concerns were based on the release of recordings and transcripts by the defendants and their "extensive interviews" when the gag order was temporarily vacated. *Id.*

Similarly here, Plaintiffs' counsel has leaked strategically selected deposition excerpts, taken out of context, which may not be admissible at trial, along with subjective commentary. The Fifth Circuit in *Brown* warned that such actions threaten a court's ability to conduct a fair trial because "'[e]xtrajudicial

comments on, or discussion of, evidence which might never be admitted at trial and ex parte statements by counsel [or parties] giving their version of the facts obviously threaten to undermine [the] basic tenant' that outcome of a trial must be decided by impartial jurors." *Brown* at 429 (quoting *Gentile v. State Bar of Nevada*, 111 S.Ct. 2720, 2743 (1991)). Sharing portions of deposition testimony creates the risk that the testimony will be taken out of context and mischaracterized in the media, and, in turn, misinform potential jurors. Consequently, the other parties are in the awkward position of balancing whether to respond to media inquiries (and running afoul of this Court's admonishment), or allow the public mischaracterization to go unchallenged.

Additionally, Plaintiffs' counsel's extrajudicial commentary has the potential to create serious safety concerns for all the individual defendants in this litigation. Law enforcement interaction with the public is a hotly debated topic in today's political and social climate, and it is patently unfair and prejudicial for opposing counsel to selectively leak small portions of depositions, take them out of context, and share them with the media, without sharing the counter evidence, or the information from their own witnesses which they would surely want to keep confidential. All parties to this litigation should be concerned about the impact that selected leaks and extrajudicial commentary will have, not only on the fairness of the legal proceedings, but also on the personal safety of the parties.

### 2. *Defendants' proposed protective order is sufficiently narrow.*

Defendants' requested relief is sufficiently narrow to prohibit only that speech having a substantial likelihood of materially impairing the Court's ability to conduct a fair trial. Defendants have not requested a blanket "no comment" rule. The Fifth Circuit in *Brown* upheld a similar gag order which prohibited the parties, lawyers, witnesses, and potential witness from giving to "any public communications media" "any extrajudicial statement or interview" about the litigation that "could interfere with a fair trial or prejudice any defendant, the government, or the administration of justice." *Brown*, 218 F.3d at 418. The gag order provided that "[s]tatements or information intended to influence public opinion regarding the merits of this case are specifically designated as information which could prejudice a party." *Id.* at 419. The gag order expressly did not prohibit the parties from discussing, "without elaboration or any kind of characterization," (1) the general nature of any allegations or defenses; (2) information contained in the public record; (3) scheduling information; (4) any decision or order by the court that is a matter of public record; and (5) "the contents or substance" of any filed motion, to the extent the motion was a matter of public record. *Id.* Defendants' proposed protective order is modeled after the language in *Brown*, and accordingly, is sufficiently narrowly tailored.

>    *3.   Defendants' proposed protective order is the least restrictive means available to ensure a fair trial in this litigation.*

Measures other than the proposed protective order would be ineffective in addressing the damaging effects of leaks and subjective commentary. This lawsuit has already generated significant local and national media attention, and the recent actions of Plaintiffs' counsel have only perpetuated the media frenzy. As the Fifth Circuit observed in *Brown*, other measures such as "extensive voir dire may not be able to filter out all of the effects of pretrial publicity, and . . . a change of venue may not suffice to undo the effects of statements" by trial participants. *Brown*, 218 F.3d at 431; *see also Gentile*, 111 S.Ct. at 2745 (noting that "voir dire, change of venue, or some other device . . . entail serious costs to the system [which] [t]he State has a substantial interest" in avoiding). Just as in *Brown*, there are no adequate alternatives that address Plaintiffs' counsel's leaks and extrajudicial statements. Consequently, Defendants' proposed protective order is the least restrictive means to cure the effects of pretrial publicity and ensure a fair trial.

### III.   PRAYER

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Protective Order and issue an order sealing all the deposition testimony in this matter, and prohibiting the parties, lawyers, witnesses, and potential witnesses from giving to any public media outlet or other third party any discovery materials or deposition testimony or any extrajudicial statement or

interview about this litigation (other than matters of public record). Defendants also seek their attorneys' fees related to this motion, and any other relief, at law or equity, to which they are justly entitled.

Respectfully submitted,

_____
**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
Southern District of Texas No. 18830
**B. Eliot New – Of Counsel**
State Bar No. 24060328
Southern District of Texas No. 884608
**GERMER PLLC**
P.O. Box 4915
Beaumont, TX 77704
(409) 654-6700 – Telephone
(409) 835-2115 – Facsimile

**COUNSEL FOR COUNTY DEFENDANTS**

 /s/ Seth Dennis_____
**Seth Dennis**
Assistant Attorney General
State Bar No. 00790580
Federal ID No. 18527
**TEXAS ATTORNEY GENERAL'S OFFICE**
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2080 – Telephone
(512) 936-2109 – Facsimile

**COUNSEL FOR STATE DEFENDANTS**

## CERTIFICATE OF CONFERENCE

I hereby certify that Counsel for the Waller County Defendants attempted to confer with opposing counsel regarding this Motion, and never received a response.

_____
**Larry J. Simmons**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Defendants' Motion for Protective Order** has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure on this the 28th day of July 2016.

_____
**Larry J. Simmons**