### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

Geneva Reed-Veal, Individually )
& as Mother and Personal )
Representative of the Estate of )
Sandra Bland, deceased., )
                    )

    Plaintiffs, )
                    )

v.                   )   No. 4:15-cv-02232
                    )   Judge David Hittner

Brian Encinia, Et al., )
                    )

    Defendants. )

## NOTICE OF OPPOSED MOTION

**TO: SEE ATTACHED SERVICE LIST**

On August 4, 2016, I shall file the attached: **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER FILED ON JULY 28, 2016 SEEKING A GAG ORDER** with the U.S. District Court, Southern District of Texas Houston Division.

Name: KARCHMAR & LAMBERT, P.C.     Attorney for Plaintiff
ADDRESS: 211 W. Wacker, Ste. 1400     Chicago Il., 60606
TELEPHONE: (312) 977-1300     Atty No.: 6237503

## PROOF OF SERVICE BY MAIL

I, the undersigned, certify that I served this notice by mailing a copy to the above-named party(ies) at the above-stated address(es) and depositing the same in the U.S. Mail at 211 W. Wacker Chicago IL. at or before 5:00 p.m. on August 4, 2016, with proper postage prepaid.

_____
CANNON D. LAMBERT, Sr., Esq.

# SERVICE LIST

## COUNSEL FOR ENCINIA
Mr. Seth Davis
Assistant Attorney General
Texas Attorney General's Office
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
seth.dennis@texasattorneygeneral.gov

## COUNSEL FOR WLLER COUNTY, and ALL WALLER COUNTY DEFENDANTS
Mr. Larry J. Simmons, B. Eliot New & Sheila Milbrandt
Germer PLLC
P.O. Box 4915
Beaumont TX 77704
Mr. Simmons' Email: ljsimmons@germer.com
Mr. New's Email:  enew@germer.com
Ms. Milbrandt's Email: sheilam@germer.com

## PLAINTIFFS' COUNSEL
Larry Rogers, Jr.
Counsel for Plaintiff
Power Rogers & Smith PC
70 W. Madison, Ste. 5500
Chicago IL 60602
lrogersjr@prslaw.com

Jesse Thomas Rhodes, III
Tom Rhodes Law Firm, P.C.
126 Villita Street
San Antonio, Texas 78205
trhodes@tomrhodeslaw.com

Robert E. Brzezinski
Tom Rhodes Law Firm, P.C.
126 Villita Street
San Antonio, Texas 78205
brezez@tomrhodeslaw.com

Wayne Colodny
Tom Rhodes Law Firm, P.C.
126 Villita Street
San Antonio, Texas 78205
wcolodny@tomrhodeslaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GENEVA REED-VEAL, Individually & as Mother & Independent Administrator of the Estate of SANDRA BLAND, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 4:15-cv-02232 Judge David Hittner |
| BRIAN ENCINIA, et al., | ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER FILED ON JULY 28, 2016 SEEKING A GAG ORDER

NOW COMES Plaintiff, Geneva Reed-Veal, by and through her attorneys, Karchmar & Lambert, P.C., and in response to Defendants' motion for a gag order filed on July 28, 2016, Plaintiff states the following:

## BACKGROUND

Defendants' motion for a gag order is not only bases on reckless assumptions, but is also fraught with error and is vastly overreaching.

1.    It is a reckless assumption, entirely erroneous and patently disingenuous for Defendants' counsel to allege in a pleading that Plaintiff's counsel "surely want[s] to keep confidential the deposition transcripts of Geneva Reed-Veal and other family members". It is deliberately disingenuous for Defendants' counsel to allege that Mrs. Read-Veal or any of Sandra Bland's family members have anything to hide. They simply do not. Plaintiff's counsel has never and will never seek to hide the deposition

Reed-Veal and other family members". It is deliberately disingenuous for Defendants' counsel to allege that Mrs. Read-Veal or any of Sandra Bland's family members have anything to hide. They simply do not. Plaintiff's counsel has never and will never seek to hide the deposition testimony of Mrs. Reed-Veal or any of Sandra Bland's family members for that matter. There are a couple simple reasons for this; (1) Mrs. Reed-Veal and her family believe in transparency and (2) Mrs. Reed-Veal and Sandra Bland's family members were truthful in their deposition testimony.

2.  In contrast, it is readily understandable why Defendants' counsel is so worried about Waller County Defendants' testimony coming to light given the numerous inconsistences and damaging admissions contained therein.

3.  No sensitive and potentially embarrassing or inflammatory evidence "came out" in Ms. Reed-Veal's deposition nor did such testimony arise out of any of Sandra Bland's family's depositions. It is reckless and incompatible with the truth for Defendants' counsel to proffer baseless innuendo suggesting that it did.

4.  Defendants' claim that Plaintiff's counsel has leaked "selectively chosen portions of recent [Waller County defendant] deposition testimony" to the media "out of context" is fraught with error. First, nothing attributed to Plaintiff's counsel in the Houston Chronicle cited by Defendants is "out of context". The

"context" Defendants' counsel refers to is well known to the parties, media and public; Waller County Jail log entries claiming that an inmate check was done on Sandra Bland at 8:01 is false. The check did not happen and the jail was cited because of it. The truth is, the media, for almost a year, has been in possession of the Waller County Jail Log which fraudulently purports that an inmate check was performed on Sandra Bland at 8:01 am on July 13, 2015. Further, the media and public have known for nearly a year that the purported July 13, 2015 8:01 am check never happened. In fact, the media and public have been well aware, for over a year, that the Waller County Jail was cited by the Texas Commission on Jail Standards for failing to execute said inmate check. Media articles from back in July of 2015 abound memorializing the same as evidenced by a July 23, 2015 Wall Street Journal article attached hereto. (See Ex. 1 at Pg. 3). Not only that, the media and public have known for at least 6 months that the special prosecutors appointed to review the circumstances surrounding Sandra Bland's death were told about the falsified records mentioned in the Houston Chronicle news article Defendants' cite in support of their motion. Simply put, the information contained in Defendants' exhibit A that is attributed to Plaintiff's counsel was already well known by both the media and public for nearly a year.

3

5.      For clarity, and despite his efforts to do so, Defendants' counsel is not authorized to speak for Mrs. Reed-Veal or Sandra Bland's family members. Defendants' counsel claims that he brings Defendants' motion "for the benefit of Plaintiffs, their witnesses and family members ..." (See Defendants' Motion for Protective Order, Document 131 at Pg. 2).

6.      It is erroneous, if not disingenuous, for Defendants' counsel to file a pleading alleging that Defendants' motion is brought for the benefit of Mrs. Reed-Veal and her family. Mrs. Reed-Veal has no desire or interest in a gag order being entered in this case. A gag order, like the one proposed and which tramples on the dictates of both the Texas State and Federal Constitution, is not sought by Mrs. Reed-Veal, her witnesses or Sandra Bland's family members as she and they believe in truth transparency.

7.      Defendants motion offers a selective account of the initial case conference in this action. This Honorable Court expressly stated that it was not issuing a gag order in this case. This Court also mentioned to the parties that among others, it had presided over the Allen Stanford Financial Case, a county commissioner bribery case, as well as an Enron case.

4

8.      The Court further stated that it does not issue gag orders but that if there was some problem that were to present itself, the Court would issue a *sua sponte* order addressing the same. Finally, this Honorable Court expressly stated that it has never issued a gag order in a case like the one at bar.

9.      Plaintiff's review of this Honorable Court's instructions and discussions at the initial case conference fails to reveal that the Court "admonished the parties not to try this case in the media" but even if such an admonition was made, Plaintiff's counsel has not and is not trying this case in the media. At the same time, however, Mrs. Reed-Veal and her counsel are unwilling to be dishonest with the public regarding the state and status of this case.

10.     A frank assessment of the circumstances surrounding this case reveals that since July 13, 2015, Defendants have unilaterally controlled the flow of information to the public, and thus far, have presented an assumptive, inflammatory, and factually challenged version of the case. To that end, Defendants' have made contentions that (i) Sandra Bland did not give suicidal indications during her intake, (ii) County Defendants were well trained in recognizing and treating such indications, and (iii) Sandra Bland committed

suicide[1] because (a) her family and friends' refused to post her bail and (b) because she used marijuana which altered her mood and judgement. Defendants' accusations have been widely reported in the media[2] and readily accessible to anyone with internet access.[3] As an example, County Defendants' motion for summary judgment made public record Ms. Bland's EMS Records, autopsy report, suicide screening reports containing sensitive information about Ms. Bland's personal history, video from July 13, 2015, door/intercom logs and a host of jail officials' affidavits. Those exhibits were used in support of Defendants' theory of the case as well as to insinuate that Sandra Bland was disconnected from her family. Said exhibits were further used to bolster Defendants' claims that a sense of isolation and rejection, and prior drug use pushed Ms. Bland to commit suicide

---

[1] *See generally*, Document 39, County Defendants' Motion for Summary Judgment ("It is apparent now that Bland's inability to secure her release from jail, and her family and friends' refusal to bail her out of jail, led her to commit suicide… the decision was hers alone.")

[2] *See, e.g.*, Ward, Clifford, *Failure to be bonded out led Sandra Bland to suicide, jail officials allege*, (Nov. 12, 2015), available at: http://www.chicagotribune.com/news/ct-sandra-bland-court-motions-met-20151112-story.html; Garza, Lisa Maria, *Texas County says woman killed herself when no one bailed her out*, (Nov. 13, 2015), available at: http://www.reuters.com/article/us-texas-death-idUSKCN0T22EX20151113?feedType=RSS&feedName=domesticNews; Michael Graczyk, *Texas officials say Sandra Bland, who died in jail, was despondent over not making bail*, (Nov. 13, 2015), available at: http://www.latimes.com/nation/nationnow/la-na-nn-sandra-bland-lawsuit-20151113-story.html

[3] Copies of Defendants' Motions for Summary Judgment and this Protective Order, respectively can be found publicly at https://www.scribd.com/document/319647445/Motion-for-Protective-Order-Sandra-Bland-Case; https://www.scribd.com/document/289601485/Waller-County-s-Motion-for-Summary-Judgment. As is relevant here, as of August 1, 2016, Defendants' motion for protective order has already been publicly viewed at the aforestated address over one thousand times.

and that Defendants were more-than-qualified to recognize suicidal inmates, had properly screened Ms. Bland, and that Defendants competently followed all proper protocols and procedures with regard to her custody.

11.    Given the above, it is striking that Defendants would now move for a gag order in an effort to suppress the release of information in this case.

## ARGUMENT

### I. Legal Standard

Prior restraints, "predetermined judicial prohibition restraining specified expression", "face a well-established presumption against their constitutionality". U.S. v. Brown, 218 F.3d 415 (5th Cir. 2000) See also; Bernard v. Gulf Oil Co., 619 F.2d 459, 467 (5th Cir.1980). Substantively, Texas State Law protects speech even moreso than does the 1st Amendment. The presumption in all cases under section eight of the Texas State Constitution is that pre-speech sanctions or "prior restraints" are unconstitutional. Davenport v. Garcia, 834 S.W.2d 4 (Tex. 1992); Ex Parte Price, 741 S.W.2d 366, 369 (Tex. 1987) (Gonzalez, J., concurring) ("Prior restraints . . . are subject to judicial scrutiny with a heavy presumption against their constitutional validity."); Amalgamated Meat Cutters v. Carl's Meat and Provision Co., 475 S.W.2d 300 (Tex.Civ.App. Beaumont 1971, writ dism'd). The Texas State Constitution's free speech provision is broader than the First

7

Amendment. O'Quinn v. State Bar of Texas, 763 S.W.2d 397, 402 (Tex. 1988) (noting that "Texas' free speech right [has been characterized] as being broader than its federal equivalent," the court concluded that "it is quite obvious that the Texas Constitution's affirmative grant of free speech is more broadly worded than the first amendment"); Channel 4, KGBT v. Briggs, 759 S.W.2d 939, 944 (Tex. 1988) (Gonzalez, J., concurring) (the state provision is "more expansive than the United States Bill of Rights"). See also Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989) ("our state free speech guarantee may be broader than the corresponding federal guarantee"). On issues of substantive law, like limiting speech, Texas State Law should be applied. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). This Honorable Court may, however, impose an appropriate gag order on parties and/or their lawyers if it determines that extrajudicial commentary by those individuals would present a substantial likelihood of prejudicing the court's ability to conduct a fair trial. U.S. v. Brown, 218 F.3d 415 (5th Cir. 2000).

**A. No Substantial likelihood exists that extrajudicial commentary by the parties or their counsel will prejudice this Honorable Court's ability to insure a fair trial.**

There is no substantial likelihood that extrajudicial commentary by the parties or their counsel will prejudice this Honorable Court's ability to ensure a fair trial in this case. The information that Defendants claim to be concerned about

8

was already known to the media and public. For nearly a year the media and public have had access to the falsified Waller County Jail Log which purports that an inmate check was performed on Sandra Bland at 8:01 am on July 13, 2015. The media and public have long since known that the check never happened and that Waller County Jail was cited by the Texas Commission on Jail Standards for failing to execute said inmate check. Despite the above, Defendants claim that comments by Plaintiff's counsel, on information already of public record, create a substantial likelihood that this Honorable Court will not be able to conduct a fair trial. Plaintiff and her counsel disagree.

Defendants' seek support from U.S. v. Brown in bringing their motion. The case at bar and Brown are not alike. Brown was a criminal matter that involved a gag order which the court raised on its own, later dropped for purposes of a public election, and thereafter reinstated after an avalanche of inadmissible and inaccurate information was released to the press and then proselytized in extensive interviews. *U.S. v. Brown*, 218 F.3d 415 (5th Cir. 2000). The Brown Court, reissued a gag order after the parties released phone recordings and transcripts to the media and also held press conferences while playing certain pertinent recordings. Id.

9

In denying Defendant's motion to vacate the gag order, the Court based its opinion on two concerns: one, that unrestricted statements by participants in this trial would *only serve to* increase the volume of pre-trial publicity; and two, that increased volume of pre-trial publicity would taint the already impaneled and unsequestered jury in another already-ongoing proceeding, as well as implicating two other related pending cases. *Brown*, 218 F.3d at 429-432.

Dealing with the most obvious distinction first, different from Brown, there is no impaneled jury in another, already ongoing, proceeding. This concern that the Brown Court had, simply does not exist here.

The Brown Court's other previously mentioned concern is absent from this case as well. Sandra Bland's death has been in the media nearly every day since she was found hanging. Plaintiff's counsel's comments about already known information does not increase the volume of pre-trial publicity. Pre-trial publicity has been and continues to be present irrespective of Defendants' desire for the opposite. Plaintiff's counsel's comments about information already in the public domain is, in no way, similar to disseminating an avalanche of tapes to radio and TV. Even though virtually all of the depositions in this case have been videotaped, Plaintiff's counsel has not taken steps to release said footage. It is true that Plaintiff and her counsel have absolutely no objection to the release of the

10

videotaped testimony in this case, since it is sworn evidence, however, it is an impermissible leap to suggest that simply because Plaintiff has no objection to the same, she and her counsel pose a substantial likelihood of prejudicing this Honorable Court's ability to conduct a fair trial. They do not. Illustrative of the above is the fact that the parties have deposed 16 people to date, 7 of which are Waller County Defendants. Despite the fact that Plaintiff's counsel has uncovered great deal of damaging evidence, which harms Defendants' cases, Plaintiff's counsel has not acted in a manner so as to present a substantial likelihood of prejudice to the judicial process. As an example, Defendants filed a motion for summary judgement claiming that Mrs. Reed-Veal and her family was responsible for Sandra Bland's death alleging that they made no effort to bail Ms. Bland out of jail. Bail Bondsmen, Joe Booker, testified in his deposition in ways that cut directly at the heart of Defendants' summary judgment allegations, yet his testimony which refutes Defendants' attempt to blame shift, has not been released or even commented on.

The information that has been commented on by Plaintiff's counsel is that which was already in the public domain and there is no substantial likelihood that the parties will receive an unfair trial before this Honorable Court. As such, it is incongruent to apply Brown to the facts of this case. Since no substantial

11

likelihood exists which threatens a fair trial in this case, Defendants' motion for a gag order should be denied.

Defendants' counsel's motion goes on to shift gears arguing that Plaintiff's counsel's comment on information known to the media and public for over a year "has the potential to create serious safety concerns" for the Defendants. It is unclear how commenting on facts already in the public domain for a year creates an actual serious safety concern for Defendants. Further, no showing of the existence of any real concern has been made. Rather, Defendants' counsel asks this Honorable Court to wildly speculate about the possibility of an unknown, unidentified "potential" threat to jailers that does not yet exist. Clearly, no one desires violence to visit any of the parties in this litigation. To conjure up a non-existent risk in an effort to hide information from the public is simply untenable. No substantial likelihood prejudicing this Honorable Court's ability to conduct a fair trial exists. Therefore, no gag order should be issued and Defendants' motion should be denied.

**B. No Gag order is appropriate no matter how narrow Defendants' claim their proposed order to be.**

Defendants' are not able to establish that a substantial likelihood of prejudice exists which threatens a fair trial in this case. Despite the same,

12

Defendants' ask this Honorable Court to issue a gag order like the one handed down in Brown. In Brown, however, the Court reacted to an avalanche of information released immediately after an initial gag order was temporarily lifted by reissuing a gag order on the parties.

In contrast, despite the fact that this case has been in the news nearly every day since Sandra Bland died and from when suit was filed on August 4, 2015, for that matter, no avalanche of information threatening a fair trial has been released. Unlike in Brown, this Honorable Court (even though it did notify the parties that, should it perceive a problem, it would *sua sponte* issue a gag order) has not handed down a *sua sponte* gag order. Deposition transcripts containing the current addresses and phone numbers of witnesses have not been released. Further, in Brown, the avalanche of released information was not previously known to the media and public. Here, the information in the July 21, 2016 Houston Chronicle article that Defendants' point to has been known to the media and public for almost a year as evidenced by the July 23, 2015 Wall Street Journal article attached hereto as Exhibit 1.

Since no basis for a gag order exists, no order should be issued, no matter how narrow it purported to may be. A gag order, without sufficient basis for its issuance, is unconstitutional. Nebraska Press Ass'n v. Stuart, 427 U.S. 539,559

[1976] (prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights).

## C. No Gag order is appropriate and no need for restriction exists.

No substantial likelihood exists which threatens a fair trial in this case. As stated above, the media and public have known for over a year that Waller County Jail records purporting that Sandra Bland was checked hourly the morning of her death were false. Further, the media and public have also known for over a year that the July 13, 2015 8:01 am check did not happen even though the jail log has an entry falsely claiming that it did. The media and public know too that Waller County Jail was cited by the Texas Commission on Jail Standards for failing to make the inmate check recorded in said log. To impose restrictions, based on Defendants' apprehension, on information already known to the media and public is not appropriate. Instead, no restriction should be applied and this Honorable Court should deny Defendants' motion for a gag order.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion for a gag order. Plaintiff further requests any and all other relief as may be deemed just and equitable on her behalf.

Respectfully submitted:

___/s/ Cannon D. Lambert, Sr.___
CANNON D. LAMBERT, Sr.

Counsel for Plaintiff
Cannon Lambert
Illinois Bar # 6237503
Federal Bar # 6237503
cannon@karchmarlambert.com
Karchmar & Lambert, P.C.
211 W. Wacker Drive
Suite 1400
Chicago, IL 60606
Telephone: 312-977-1300
Facsimile: 312.236.0920

15

Jesse Thomas Rhodes, III
Attorney in Charge
Texas Bar #16820050
Federal Bar #17613
trhodes@tomrhodeslaw.com
Robert E. Brzezinski
Texas Bar #00783743
Federal Bar #17609
brzez@tomrhodeslaw.com
Wayne Colodny
Texas Bar # 04626440
Federal Bar #4598395
wcolodny@tomrhodeslaw.com
Erin J. Oglesby
Texas Bar # 24083597
Counsel for Plaintiff
TOM RHODES LAW FIRM, P.C.
126 Villita Street
San Antonio, Texas 78205
Telephone: (210) 225-5251
Facsimile: (210) 225-6545

Larry R. Rogers, Jr.
Counsel for Plaintiff
Illinois Bar # 6220743
Federal Bar # 6220743
lrogersjr@prslaw.com
Power Rogers & Smith PC
70 W. Madison St. # 5500
Chicago, IL 60602
Telephone: (312) 313-0202
Facsimile:(312)977-1999